Jonathan Che Gettleman, SBN 243560
CABALLERO & GETTLEMAN, LAW OFFICE INC.
223 River Street, Suite D
Santa Cruz, California 95060
TELEPHONE: 831-427-2658
FACSIMILE:  831-515-5228
EMAIL: jonathangettleman@yahoo.com

Eric John Nelson, SBN 282020
LAW OFFICE OF ERIC JOHN NELSON
223 River Street, Suite D
Santa Cruz, California 95060
TELEPHONE: 831-588-4818
FACSIMILE: 831-515-5185
EMAIL:  enelsonlaw@gmail.com

Diane Vaillancourt, SBN 181348
Law Office of Diane K. Vaillancourt
849 Almar Avenue, Suite C403
Santa Cruz, CA 95060
TELEPHONE:  831-458-3440
EMAIL:  vaillancourt@cruzio.com
Attorneys for Plaintiffs L.S. and W.S.

David A. Fulton, Esq.
CARTWRIGHT, SCRUGGS, FULTON & WALTHER
716 Ocean Street, Suite 100
Santa Cruz, CA 95060
TELEPHONE:  831-457-1700
FACSIMILE: 831-457-3788
EMAIL: david@csfwlaw.com
Attorneys for Plaintiff S.S.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.S, a minor, by and through her Guardian ad Litem, Herbert SMITH, successor in interest; W.S, a minor, by and through his Guardian ad Litem, Herbert Smith; S.S., a minor by and through her Guardian ad Litem, WHITNEY HOPE SMITH<br><br>        Plaintiffs,<br><br>vs.<br><br>COUNTY OF SANTA CRUZ; CALIFORNIA FORENSIC MEDICAL GROUP, INC.; DOES 1-25,<br><br>        Defendants. | Case No. 15-cv-03032-EJD<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS WITH PENDENT STATE CLAIMS.[1]**<br><br>**JURY TRIAL DEMANDED** |

[1] Filed as a matter of course under Fed. R. Civ. P. 15(a)(1) and Civ. L.R. 10-1.
1.

LAW OFFICEs
223 River Street
Suite D
Santa Cruz, CA
95060

SECOND AMENDED COMPLAINT – Case No. 15-cv-03032-PSG

**JURISDICTION**

1. This action arises under Title 42 of the United States Code, sections 1983 and 1988. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, sections 1331 and 1343 and 42 U.S.C. Section 12188(a). This Court also has supplemental jurisdiction over Plaintiff's state law causes of action under 28 U.S.C. Section 1367.

2. Venue is proper in the Northern District of California pursuant to 28 U.S.C. section 1391(b) because the unlawful acts and practices alleged herein occurred in the County of Santa Cruz, California, which is within this judicial district.

3. This Court has jurisdiction to grant the declaratory relief requested pursuant to 28 U.S.C. §2201 and Federal Rules of Civil Procedure, Rule 57.

**PARTIES**

4. Minor Plaintiff, L.S., is and was at all times herein mentioned the daughter of decedent AMANDA SLOAN. She is represented in this action by her father and Guardian ad Litem, HERBERT SMITH. Minor Plaintiff L.S., is a citizen of the United States residing in the County of Santa Cruz in California. L.S. is the successor-in-interest to Decedent AMANDA SLOAN.

5. Minor Plaintiff, W.S., is and was at all times herein mentioned the son of decedent AMANDA SLOAN. He is represented in this action by his father and Guardian ad Litem HERBERT SMITH. Minor Plaintiff W.S. is a citizen of the United States residing in the County of Santa Cruz in California.

6. Minor Plaintiff, S.S., is and was at all times herein mentioned the daughter of decedent AMANDA SLOAN. She is represented in this action by her adoptive mother and Guardian ad Litem, WHITNEY HOPE SMITH. Minor Plaintiff, S.S., is a citizen of the United State residing in the County of Santa Cruz in California. S.S. is the successor-in-interest to Decedent AMANDA

LAW OFFICEs
223 River Street
Suite D
Santa Cruz, CA
95060

SECOND AMENDED COMPLAINT – Case No. 15-cv-03032-PSG

SLOAN.

7.   Defendant COUNTY OF SANTA CRUZ ("COUNTY") is a county, duly organized and existing under the laws of the State of California. Defendant COUNTY operates and is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies, including the Santa Cruz County Sheriff's Office ("Sheriff's Office") and the Santa Cruz County Jail ("Jail"), Santa Cruz County Health Service Agency ("SCHSA"), specifically its mental health Crisis Intervention Team ("CIT"), and their agents and employees.

8.   Defendant CALIFORNIA FORENSIC MEDICAL GROUP ("CFMG") is a private, California for-profit, medical services company contracted by COUNTY to provide medical services to Santa Cruz County jail inmates at all relevant times.

9.   Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and, therefore, sue these defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each DOE Defendant so named was employed by Defendants COUNTY (including Sheriff's Office, the Santa Cruz County Jail, and SCCHSA) and/or CFMG at the time of the conduct alleged herein.  Plaintiffs allege Defendants DOES 1 through 25, and each of them were deliberately indifferent to AMANDA SLOAN's medical and mental health needs and safety, failed to provide psychiatric care to her or take other measures to prevent her from attempting suicide, violated her civil rights, wrongfully caused her death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct.  Plaintiffs further allege that the DOE Defendants violated Plaintiffs' Fourteenth Amendment rights to familial association and companionship, which is predicated on their deliberate indifference in causing the death of AMANDA SLOAN.  Plaintiffs will amend their complaint to state the names and capacities of DOES 1 through 25, inclusive, when they have been ascertained.

3.

10.  Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, whether individual or official capacity, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each Defendant so named was employed by Defendant COUNTY and/or CFMG at the time of the conduct alleged herein.  Plaintiffs allege that each of Defendants DOES 1-25 were responsible for the training, supervision and/or conduct of the Jail employees and/or agents involved in the conduct alleged herein.  Plaintiffs allege that each of Defendants DOES 1 through 25 was also responsible for and caused the acts and injuries alleged herein.  Plaintiffs will amend their complaint to state the names and capacities of DOES 1 through 25, inclusive, when they have been ascertained.

11.  For state law causes of action, PLAINTIFFS are required to comply with statutory tort claim requirements.  PLAINTIFFS have complied with all applicable requirements.

## PRELIMINARY ALLEGATIONS

12.  Defendant COUNTY is a public entity and is sued under Title 42 U.S.C. §§ 1983 and 1988 for violations of the Fourteenth Amendments of the United States Constitution, California state law, the California Tort Claims Act, and the Government Code for the acts and omissions of COUNTY OF SANTA CRUZ (including Sheriff's Office, the jail, and SCCHSA's CIT) and DOES 1-25, and each of them, who at the time they caused Plaintiffs' injuries, damages and death were duly appointed, qualified and acting officers, employees, and/or agents of COUNTY and acting within the course and scope of their employment and/or agency.  In engaging in the conduct described herein, Sheriff's Office DOES 1-25, inclusive, exceeded the authority vested in them as public employees under the United States and California Constitutions and as Sheriff Deputies/Correctional Officers and Supervisors employed by Defendant COUNTY.

13.  Defendant CFMG is a private correctional medical services company and is sued under

LAW OFFICEs
223 River Street
Suite D
Santa Cruz, CA
95060

Title 42 U.S.C. §§ 1983 and 1988 for violations of the Fourteenth Amendments of the United States Constitution, California state law, the California Tort Claims Act, and the Government Code for the acts and omissions of CFMG and DOES 1-25, and each of them, who at the time they caused Plaintiffs' injuries, damages and death were duly appointed, qualified and acting employees and/or agents of CFMG and acting under color of law and within the course and scope of their employment and/or agency.

14. Plaintiffs allege that the conduct of each defendant deprived AMANDA SLOAN of her constitutional right to life, her constitutional right to adequate medical and mental health care for her serious but treatable medical and mental health needs, as well as custodial care and supervision, and caused AMANDA SLOAN to suffer grievous harm and physical injuries prior to her death, and ultimately caused her death while she was in the custody of Defendants.

15. Each of the Defendants caused and is responsible for the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.

16. Whenever and wherever reference is made in this Complaint to any act by Defendants, each Defendant was the agent of the others, was acting within the course and scope of this agency, and all acts alleged to have been committed by any one of them shall also be deemed to mean the acts and failures to act of each Defendant and DOE Defendants individually, jointly or severally.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

1
2

**STATEMENT OF FACTS**

3
4
5
6
7

17.  Decedent AMANDA SLOAN ("SLOAN"), age 30, suffered several tragic losses in the years preceding her death by suicide at the Santa Cruz County Jail. On August 16, 2012, her husband Jeffrey Smith was murdered outside their Santa Cruz County home and died in her arms. Distraught by this and several other deaths in her family, she became increasingly volatile, her issues with drug addiction worsened and she repeatedly threatened suicide.

8
9
10
11
12

18.  The Santa Cruz County Sheriff's Office was well-familiar with her history. She had been in and out of jail several times over the past decade. More recently, deputies had been looking for her after she allegedly fired a shot out the sun roof of the BMW she was driving during a police pursuit on November 11, 2012. She made Santa Cruz County's most wanted list.

13
14
15
16
17
18
19
20

19.  On or about November 26, 2015, SLOAN visited her children who were staying at her mother's home. To avoid a traumatic confrontation in the children's presence, SLOAN's mother did not call the police at that time. The next day Child Protective Services removed SLOAN's children from the home. Distraught at losing her children, on November 28, 2012, SLOAN called her mother, who urged her to surrender. She told her mother she was "crazy" and planned to commit "suicide by cop." SLOAN's mother immediately notified authorities of her suicide threat and emergency dispatchers broadcast a countywide "be on the lookout."

21
22
23
24
25
26
27
28

20.  On December 2, 2012, SLOAN was arrested on multiple charges, including assault with a firearm on a police officer. In the course of the arrest, SLOAN allegedly fired a shot from inside her mother's home. She then went outside and pointed the gun at her own head before swinging it about, taunting the officers to shoot her. A deputy shot her five times in the leg with an assault rifle and another shot her in the hand that was holding the gun, ending the confrontation. Speaking to the press, a Santa Cruz Sheriff's official stated that SLOAN was at risk of hurting somebody or

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

6.

committing "suicide by proxy," meaning, "suicide by cop."

21.  SLOAN was transported by helicopter to the Santa Clara Valley Hospital trauma center. Other than her initial treatment Santa Clara Valley hospital for gunshot wounds stemming from the December 2, 2012 incident, SLOAN was continuously housed in the Santa Cruz County Jail until her death on July 17, 2013.

22.  On information and belief, at or about the time SLOAN was delivered to the Santa Cruz County Jail in mid- to late-December 2012, correctional staff charged with monitoring SLOAN knew of her suicidality.

23.  During her incarceration, CFMG staff and/or CIT staff, and certain of DOES 1-25, including but not limited to CIT's treating psychiatrist, diagnosed and medicated SLOAN for bi-polar disorder.  SLOAN was given medications that have known side effects of suicidal ideation and depression.  On information and belief, these staff members gave SLOAN these medications knowing their side effects of suicidality and also knowing she had a recent history of repeated suicide attempts. Knowing all this, they failed to take basic measures to protect SLOAN from suicide or see that she was monitored closely.

24.  During this same period of incarceration, SLOAN attempted to commit suicide at least twice by slashing her wrists.  The first time was in the spring of 2013.  On information and belief, the second wrist slashing incident was within the week preceding her death by asphyxiation on July 17, 2013.  CFMG, CIT staff, jail correctional staff and certain of DOES 1-25 knew of these suicide attempts by wrist slashing. On information and belief, she was treated by jail staff who bandaged her wrist. The bandages on her wrist were an obvious sign to anyone who encountered her that she recently cut her wrist.

25.  In letters sent by SLOAN to relatives from the Jail, she discussed her history of at least

7.

LAW OFFICES
223 River Street
Suite O
Santa Cruz, CA
95060

five suicide attempts and intention to commit suicide during her incarceration. Given her emphatic expressions of suicidal ideation, SLOAN was intermittently placed on and taken off the jail's observation "O" unit for medical and mental health monitoring. However, she was maintained in the general population for the six weeks preceding her suicide.

26. On July 14, 2013, on information and belief, a visiting friend discussed with her written communications she had just received from the court and social worker about her children being taken from her permanently and placed outside her circle of family and friends. SLOAN became extremely agitated, made a scene, and crying uncontrollably, stormed out of the jail visitation area.

27. Jail staff witnessed SLOAN storm out of the visitation area. They observed that she was extremely agitated and volatile. Instead of taking suicide precautions or monitoring SLOAN's condition, correctional officers simply returned SLOAN to her cell where, on information and belief, she remained alone and isolated. She was not placed on suicide watch. No special precautions were taken to protect her from self-harm.

28. Two days after SLOAN learned she was permanently losing her children, on July 16, 2013, correctional officers recorded that she was still "very agitated and uptight." Knowing she had a recent and repeated history of suicide attempts, they nonetheless continued to leave her alone in her cell without basic precautions or monitoring.

29. Being an inmate considered at risk, Sloan was a frequent topic of discussion at the Monday through Friday morning review sessions between CFMG, CIT, and Corrections Bureau staffs. Her volatility and suicide risk were well-known by these staff.

30. According to written Sheriff's Office protocols and State of California correctional standards, correctional staff are required make safety checks on each inmate at least once an hour. They are to observe the inmate through the cell window, make sure they see visible skin and verify

8.

that the inmate is breathing. They are to record their safety check using the Pipe Log, which is an electronic record of the times that corrections officers check on the inmate. This is an ordinary monitoring protocol required for every inmate in the general population. In SLOAN's case, this minimal protocol was not followed.

31. The signed Pipe Log for the correctional officer assigned to monitor SLOAN recorded that her cell was checked five times in the hours preceding her suicide. In reality, the officer checked her cell only once, at 10:21 p.m. on July 16, 2013. The lone safety check was conducted approximately six hours before correctional officers discovered her death. The jail's video record of the hallway documents that there was only a single safety check. The Pipe Log was falsified.

32. On July 17, 2013, SLOAN remained incarcerated pending adjudication of various charges, and was thus under the custody, control, supervision, and protection of DEFENDANTS.

33. On July 17, 2013, at 4:15 a.m., SLOAN failed to come down to the unit door for her medication when called. The nurse and correctional officer on duty went upstairs to the 2nd tier of the Jail's "A" unit. As soon as they reached her cell, they realized something was very wrong. SLOAN was hanging from an exposed metal infrastructure in the wall near the ceiling. She had no pulse. Her body was cold to the touch. A Code 3 alert was called. Life-saving efforts failed.  SLOAN was declared dead at 4:24 A.M., July 17, 2013.

34. Correctional officers observed a 2-foot by 1-foot hole that SLOAN had cut in the flimsy drywall of her cell exposing the wall's metal infrastructure, to which she had tied a handmade noose made from braided bed-sheet strips. Before SLOAN hung herself from the metal infrastructure, the hole dug in the wall was hidden by a collage of magazine clippings. In addition, SLOAN had hidden a methamphetamine pipe and razor blade behind other makeshift posters in her cell. The cell's light switch cover had been removed and replaced with a poster. And finally, SLOAN had covered the

9.

LAW OFFICEs
223 River Street
Suite D
Santa Cruz, CA
95060

window to her cell, except for a one-inch slot.

35. Possession of posters in an inmate's cell is strictly prohibited by State and local regulations. The avowed purpose of these regulations is to protect the safety of inmates and staff alike. In SLOAN's case, these minimal safety protocols were absolutely ignored.

36. The Sheriff-Coroner's Office determined the cause of SLOAN's death to be intentional asphyxiation due to hanging and classified the death a suicide.

37. DEFENDANTS' failure to protect SLOAN despite her known suicide risk was an actual and proximate cause of her suicide. Had SLOAN been placed on suicide watch when she became agitated and volatile on learning she was losing custody of her children, she would have received appropriate care. More likely than not, she would have been saved from self-harm. Staff at the jail who interacted with her knew she was at serious risk of suicide and failed to take the most basic steps to protect her. Instead, they placed her in an ordinary cell, leaving her isolated and alone with no monitoring whatsoever for several hours at a time. They left her with the means to kill herself barely hidden behind the obviously noncompliant makeshift posters.

38. SLOAN indicated on multiple occasions to COUNTY OF SANTA CRUZ jail and mental health staff that she had recent suicide attempts and/or suicidal ideation. SLOAN was well-known to COUNTY OF SANTA CRUZ jail staff from multiple previous incarcerations at the same facility. At the time of her death, SLOAN was taking the anti-psychotic medication prescribed by jail health care providers that had a known side effect of suicidal ideation.

39. SLOAN's death was the proximate result of DEFENDANTS' failure to reasonably supervise and care for her, especially having been on notice of her history of suicide attempts and/or ideation, her mental health condition, and her current state of extreme agitation and volatility, including while in custody.

10.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

40. Plaintiffs allege that DEFENDANTS allowed conditions at the Santa Cruz County Jail to deteriorate, causing an environment where standards for mental health care were deliberately ignored and protocols for inmate safety were disregarded. After an unprecedented five deaths at the Jail during an eleven-month period from August 2012 to July 2013, a Santa Cruz County Grand Jury formally investigated the Jail's policies and practices.

41. In May 2014, the Grand Jury released its final report, finding in relevant part:

- that overcrowded conditions in the main jail housing units made it difficult for correctional officers to follow policies and monitor inmate safety;

- that there was a lack of consistent enforcement of rules and regulations by correctional officers, creating opportunities for inmates to hide prohibited materials;

- that SCCHSA record keeping requirements were lax and many procedures went undocumented;

- that SCCHSA provided inadequate counseling time with inmates; and

- that inmate safety was at risk because SCCHSA failed to have a comprehensive protocol manual or individualized inmate treatment plans at the main jail.

42. The Grand Jury found that SCCHSA's CIT was unable to provide information about their interactions with SLOAN preceding her death because of their inadequate record keeping. This failure to track SLOAN'S mental health condition and practice of lax, documentation resulted in Defendants failing to treat SLOAN'S mental health issues, including suicide.

43. Certain CIT mental health providers told the Grand Jury they believed she would "someday hurt herself." Because they knew she had already "hurt herself" several times, their meaning was clear: they believed she was at risk of self-harm including suicide.

44. The Grand Jury further found that the Sheriff's Office has protocols concerning cell

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

inspections and regulations for items permitted in cells: (1) Concerning cell inspections, safety checks should be conducted at least once an hour; officers should observe the inmate through the cell window, make sure they see visible skin, and verify that the inmate is breathing; and they should document their check using the Pipe Log.  (2) Concerning items in cells, inmates are not allowed to place anything on the doors, windows, or walls of their cells. The Grand Jury found that, in SLOAN's case, **neither** of these essential inmate safety protocols was followed. Both protocols were violated by correctional officers monitoring SLOAN.

45.  With respect to (1), concerning cell inspections and safety checks: The Grand Jury found that the correctional officer's failure to conduct safety checks was not an isolated occurrence but rather the result of lax standards and minimal officer oversight.

46. The Grand Jury noted that, in March 2013, the jail was found out of compliance with inmate safety check documentation pursuant to an official State inspection by the Board of State and Community Corrections ("BSCC"). The BSCC required a corrective action plan to correct safety check deficiencies. Corrective actions were taken only **after** SLOAN killed herself. Four months after the BSCC inspection, on July 17, 2013, SLOAN committed suicide after the correctional officer on duty utterly failed to monitor her for six hours before she was discovered, dead.

47.  Approximately two weeks after SLOAN's suicide, in August 2013, the Jail management notified the BSCC that the Jail had instituted corrective action consisting of new requirements for supervisors to review their officers' Pipe Logs on a daily basis and also to accompany their officers on some safety checks. In addition, after SLOAN's suicide, the Jail also appointed a compliance officer, whereas there was none before.

48.  Additionally, with respect to (2), concerning permitted items in cells, ignoring these safety protocols was a deeply entrenched practice at the Jail, one that continued unchecked for at

12.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA.
95060

least six-months **after** SLOAN's July 17, 2013, suicide. On January 27, 2014, the Grand Jury conducted a site visit at the Jail. During the site visit, Grand Jurors observed multiple instances of towels covering cell windows, posters on cell walls and various items haphazardly spread around the cells and on the floor, in patent violation of Corrections Bureau regulations and safety standards. In a statement to the press, one Grand Juror said, "We saw pretty egregious failures on the part of corrections. A lot of contraband in some of the areas." This pattern of "egregious failures" on the part of corrections continued long after SLOAN hid the hole in the wall and the exposed metal infrastructure from which she would hang herself behind a makeshift poster.

49. On questioning correctional officers concerning enforcement issues, Grand Jurors were told that there were no consistently applied disciplinary standards for rule violations, and that officers on different shifts were free to take different approaches to inmate discipline, thereby ignoring regulations and protocols according to officer discretion.

50. Four of the five deaths investigated by the Grand Jury took place after CFMG assumed responsibility for medical care at the jail in September 2012 and was supposed to coordinate mental health care with SCCHSA's CIT team. SLOAN was the fourth death to occur on CFMG's and CIT's combined watch and the second death by suicide. SLOAN committed suicide within six months of inmate Bradley Dreher's suicide. Like Dreher, SLOAN died of "intentional asphyxiation due to hanging." Following Dreher's suicide, neither the Jail, CFMG nor CIT took any corrective measures to protect inmates known to be at suicide risk, i.e. SLOAN, from asphyxiation by hanging.

51. The Grand Jury's findings—along with the documentation they reviewed, the testimony they heard, and the observations they made—evidence a de facto policy and/or custom on the part of policymakers for COUNTY, including but not limited to COUNTY's Board of Supervisors, Santa Cruz County Sheriff-Coroner Phillip Womack, and SCCHSA policymakers—of deliberate

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

13.

indifference to the safety and welfare of inmates, resulting in the death of SLOAN while in COUNTY custody.

52. DEFENDANTS had, and have, a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its officer and medical employees so as to avoid unreasonable risk of harm to inmates. DEFENDANTS, each and all, failed to take necessary, proper, or adequate measures in order to prevent the violation of decedent's and plaintiffs' rights, the suffering and death of decedent, and injuries and damages to plaintiffs. DEFENDANTS inclusive, breached their duty of care to citizens in that they failed to adequately train, supervise and discipline their medical personnel employees, in the exercise of professional standards of care of suicidal patients; deputy sheriffs and officers, DOES 1-25, inclusive, in the proper detention and supervision of inmates and suicidal inmates at Santa Cruz County Jail. This lack of adequate supervisorial training demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying with deliberate indifference ongoing failures in monitoring inmates, including SLOAN, by DEFENDANTS, DOES 1-25, and jail staff.

53. Plaintiffs allege that COUNTY and COUNTY officials, including but not limited to CIT officials, failed to promulgate appropriate policies, guidelines and procedures and have failed to rectify improper practices and customs with regard to the mental health treatment and/or health and safety of Santa Cruz County Jail inmates. The failures include, but are not limited to, a failure to meet legal, national/professional and medical standards relating to the medical and psychiatric care of inmates, a failure to ensure that mental health professionals' recommendations regarding proper treatment setting are followed, failure to ensure that the staff engage in proper and required welfare checks of inmates, a failure to ensure adequate emergency response measures are taken; a failure to maintain adequate mental health staff for the Santa Cruz County Jail, a deliberate failure to maintain

14.

LAW OFFICEs
223 River Street
Suite D
Santa Cruz, CA
95060

adequate custodial staff for the Jail.

54. Defendants had knowledge of the substantial risk of harm caused by inadequate suicide prevention and treatment policies and practices in the Jail, but failed to take steps to prevent, or even diminish, the harmful effects of theses unlawful policies and practices.  Defendants were thus deliberately indifferent to the risk of harm to Decedent SLOAN created by their documented failure to operate a constitutionally adequate suicide prevention and treatment program.

55. The COUNTY, through its policymakers including the Board of Supervisors and Sheriff-Coroner Phillip Wowack, at all times relevant to the present case maintained a jail facility that was at the same time, with express knowledge of defendants, overpopulated and understaffed. Frequently, no mental health provider or physician was present within the jail.  Inadequate jail staffing contributed to the conditions and a de facto policy of inadequate monitoring.  These conditions, known at the time to all Defendants, itself amounted to a deliberate indifference as to the Fourteenth Amendment right of its inmates, specifically SLOAN, to adequate suicide prevention.

56. Despite her suicidal ideations and express threats, SLOAN was kept in isolation in a cell that failed to conform to the requirements of California State correctional standards.  Namely, the cell wall was made of permeable drywall.  The same regulations were established to protect both inmate and guards.  Keeping SLOAN contained in isolation in such a grossly nonconforming cell amounted to deliberate indifference to her health and safety, especially given jail staff's knowledge of her suicidality. SLOAN was only able to kill herself by literally cutting through her cell with a contraband razor hidden behind the illegal posters from her cell wall.

57. Jail staff deliberately failed to conduct routine safety checks as required by state regulations and the Jail's own policies and guidelines. Defendants failed to conduct safety checks at intermittent and unpredictable times.  Defendants' policy for conducting safety checks was

15.

inadequate to ensure the safety of SLOAN and amounted to a deliberate indifference to the safety and life of SLOAN.  Defendants' policy and practice for conducting safety checks—i.e., not conducting them as required—is a proximate cause of SLOAN'S death.

58. Defendants' deliberate indifference to SLOAN's serious medical needs and safety resulted in her long-term suffering and ultimately her death.  Defendants jail staff, CFMG staff, CIT staff and DOES 1-25 failed to adequately treat Decedent SLOAN for suicidality.  Defendants' policies and practices for screening, supervising and treating SLOAN'S risk for suicide were inadequate.  Defendants acted with deliberate indifference to SLOAN'S serious mental health needs.

59. As a cost-cutting measure, on or about September 17, 2012, the COUNTY, through its policymakers including the County Board of Supervisors, upon recommendation by Sheriff-Coroner Wowack, contracted with CFMG to provide inmate medical services. The approximately $3,000,000 yearly contract was projected to save the COUNTY approximately $1,500,000 per year in inmate medical services.

60. The COUNTY hired CFMG to provide these services notwithstanding CFMG's extensive history of accusations and lawsuits over inadequate medical care. Minimal due diligence would have exposed this history. After CFMG took over medical services at the Jail, inmates began dying at a shocking and unprecedented rate. The Grand Jury found that CFMG staff have insufficient oversight and treatment facilities for inmates confined in the "O" medical and mental health unit. The COUNTY continues to renew its contract with CFMG despite community protests and calls to cancel the contract.

61. According to state Department of Justice records, 72 persons committed suicide in the last decade while held in a jail served by CFMG. CFMG's population-adjusted rate for suicide and drug overdose deaths is approximately 50 percent higher than in other county jails. Most persons

16.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

who died in such cases were, like SLOAN, pretrial detainees. At least three county grand juries have criticized the company's role in inmate deaths. A company spokesperson has admitted that the company has settled six lawsuits in five years. Several more are pending, including a lawsuit in CFMG's home town of Monterey where the plaintiffs recently obtained a far reaching preliminary injunction enjoining CFMG's unconstitutional practices. See *Hernandez v. County of Monterey*, N.D. Cal. Case No. 5:13-cv-02354-PSG, Order, April 15, 2015.

62.  As a result of the Defendants' conduct alleged herein, Plaintiffs L.S. and W.S., have lost the support, love and companionship of their mother.

## DAMAGES

63.  Plaintiffs were physically, mentally, emotionally and financially injured and damaged as a proximate result of SLOAN's wrongful death, including, but not limited to, the loss of decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses.

64.  As a further direct and proximate result of the negligence and deliberate indifference of defendants, and each of them, Plaintiffs have been deprived of SLOAN's financial support.

65.  Each individual Defendant acted recklessly or with callous indifference to SLOAN's life threatening physical, medical and/or psychiatric condition and to Plaintiff's constitutional rights. Plaintiffs, as decedent's successors in interest, are therefore entitled to an award of punitive damages against said individual Defendants.

66.  Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of decedent, under the law.  Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section

17.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

SECOND AMENDED COMPLAINT – Case No. 15-cv-03032-PSG

1988.

**FIRST CAUSE OF ACTION**
(Deliberate Indifference, Fourteenth Amendment, 42 U.S.C. Section 1983)
(ALL PLAINTIFFS AGAINST ALL INDIVIDUAL AND CFMG DEFENDANTS)

67. Plaintiffs hereby re-allege and incorporate by reference all preceding paragraphs of this Complaint.

68. As set forth above, PLAINTIFFS were subjected to deprivation of rights by all individual DOE and CFMG DEFENDANTS, inclusive, acting under color of law of the United States and State of California and of the County of Santa Cruz which rights include, but are not limited to, privileges and immunities secured to Plaintiffs by the Constitution and laws of the United States.

69. By reason of the aforementioned acts, these Defendants, and each of them, have violated the constitutional rights and liberty interests of Decedent SLOAN, including those provided in the Fourteenth Amendments to the U.S. Constitution and each Plaintiff, as well as those which are protected under the Fourteenth Amendment's prohibition against depriving a person of a right to familial relationships without due process of law.

70. These DEFENDANTS knew of SLOAN's serious medical, physical and mental health condition, were deliberately indifferent to them, ignored them, failed to provide medical or mental health intervention and failed to care for her.

71. DEFENDANTS knew that SLOAN was suffering from a mental disability and was a high-risk candidate for suicide, which subjective knowledge may be imputed from the obviousness of the risk. Knowing this, Defendants were deliberately indifferent to her clear need for basic suicide prevention measures, and failed to engage in minimally adequate welfare checks, failed to ensure that her cell was safe, and/or failed to monitor her or provide supervision.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

72. DEFENDANTS knew, that SLOAN had serious but treatable mental health condition, which required care, treatment and close supervision. As a result of Defendants' deliberate indifference, SLOAN was deprived of the necessary and indicated medical intervention, care and treatment. Without proper treatment or follow-up care, her mental state deteriorated, causing her to continue to suffer pain and mental anguish in violation of her Fourteenth Amendment rights and resulting in her wrongful death by suicide.

73. As a legal cause of DEFENDANTS' deliberate indifference, acting under color of law, acts and/or inactions, Plaintiffs were deprived of their constitutional rights to a familial relationship with decedent SLOAN. Defendants' deliberate indifference caused injuries that resulted in SLOAN's death, all in violation of rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution.

**SECOND CAUSE OF ACTION**
(Survival action: Violation of decedent's civil rights, Fourteenth Amendment,
42 U.S.C. section 1983)
(ALL PLAINTIFFS AGAINST ALL INDIVIDUAL AND CFMG DEFENDANTS)

74. PLAINTIFFS hereby re-allege and incorporate by reference herein all preceding paragraphs of this Complaint.

75. The foregoing claim for relief arose in decedent's favor, and decedent would have been the Plaintiff with respect to this claim if she had lived.

76. The individual and CFMG DEFENDANTS, including DOES 1 through 25, acted under color of law in failing to reasonably supervise Decedent, were deliberately indifferent to Decedent's medical/psychiatric care, thereby depriving PLAINTIFFS and the decedent of certain constitutionally protected rights, including, but not limited to: The right to due process of law and equal protection, as guaranteed by the Fourteenth Amendment to the United States Constitution; said rights are substantive guarantees under the Fourteenth Amendment to the United States Constitution.

19.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**
(Fourteenth Amendment Municipal Liability, *Monell* - 42 U.S.C. section 1983)
(ALL PLAINTIFFS AGAINST COUNTY DEFENDANT)

77. Plaintiffs hereby re-allege and incorporate by reference all preceding paragraphs of this Complaint.

78. The aforementioned acts and/or omissions of the Defendant COUNTY in being deliberatively indifferent to Decedent SLOAN's serious medical needs and safety, and violating her civil rights were the direct and proximate result of customs, practices and policies of Defendant COUNTY as alleged herein.

79. At all times herein mentioned, Defendant COUNTY maintained a policy or de facto unconstitutional custom or practice of permitting, ignoring and condoning: (1) failure of Jail personnel to provide adequate mental health and medical assistance for the protection of the health or safety of inmates; (2) failure to properly observe and treat inmates, which includes inadequate intake, screening, evaluation, diagnosis, referral to mental health professionals, treatment plans, administration of medications, medical record keeping, staffing, communication between medical, mental health and custodial staff, housing, supervision, and access to mental and medical health care; and (3) failure to supervise, indeed "lax supervision," failure to report, investigate, and reprimand Jail personnel for their wrongful conduct.

80. PLAINTIFFS allege that Defendant COUNTY, as a matter of custom, practice and de facto policy through its policymakers Wowack, SCCHSA and DOES 1 through 25, maintained a policy, custom or practice of failing to provide adequate staff, supervision, training, or recordkeeping in the Jail causing a failure to properly monitor the inmates.

81. PLAINTIFFS allege that Defendants COUNTY, as a matter of custom, practice and de facto policy through its policymakers Wowack, SCCHSA and DOES 1 through 25, maintained a

20.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

policy, custom or practice of failing to provide the Jail with sufficient and adequately trained mental health personnel and custodial staff.

82.  Each policy, custom or practice of COUNTY posed a substantial risk of serious harm to SLOAN and Defendant COUNTY, through its policymakers Wowack, SCCHSA and DOES 1 through 25, knew its policy posed this risk, given that the risk was obvious.

83.  PLAINTIFFS are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by DOES 1-25, and/or each of them, Defendant COUNTY, through its policymakers Wowack, SCCHSA and DOES 1 through 25, and/or each of them, allowed Jail personnel to continue their custom and practice of deliberate indifference unchecked, resulting in the violation of the PLAINTIFFS' rights as alleged herein.

84.  The aforementioned acts and/or omissions and/or deliberate indifference by high ranking SANTA CRUZ COUNTY officials, including high ranking Sheriff's Office officials including Wowack, SCCHSA officials, and DOES 1-25, and each of them resulted in the deprivation of PLAINTIFFS' constitutional rights.  These customs, practices or policies were the legal cause of Plaintiffs' injuries, and each individual Defendant acting in accord with this custom, policy or practice acted with deliberate indifference to the needs of persons such as SLOAN, who was in the custody and care of DEFENDANTS.

85.  Said rights are substantive guarantees under the Fourteenth Amendments to the United States Constitution.

### FOURTH CAUSE OF ACTION
(C.C.P. Section 377.60 and 377.61)
Wrongful Death-Negligence
(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

86.  PLAINTIFFS re-allege and incorporate by reference herein all preceding paragraphs of

21.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060

this Complaint, except for allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by defendants, and allegations requesting punitive damages.

87. All DEFENDANTS' negligent actions and/or negligent failure to act within the scope and course of their employment with Defendants, as set forth herein-above proximately caused the death of decedent SLOAN, Plaintiffs' mother, on July 17, 2013.

88. As an actual and proximate result of said DEFENDANTS' negligence, and the death of decedent, PLAINTIFFS have sustained pecuniary loss resulting from the loss of comfort, society, attention, services, and support of their mother, decedent, in an amount according to proof at trial.

89. As a further actual and proximate result of said DEFENDANTS' negligence, plaintiffs have incurred funeral and burial expenses, in an amount according to proof at trial.

90. Pursuant to California C.C.P. Sections 377.60 and 377.61, PLAINTIFFS have brought this action, and claim damages from said DEFENDANTS for the wrongful death of decedent, and the resulting injuries and damages.

## FIFTH CAUSE OF ACTION
### (Violation of Civil Code Section 52.1)
### (ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

91. PLAINTIFFS re-allege and incorporate by reference herein all preceding paragraphs of this Complaint.

92. PLAINTIFFS are informed and believe and thereon allege that while SLOAN was under the sole exclusive care of all DEFENDANTS as described herein, and in DEFENDANTS' custody, she was suffering from a medical and mental health condition which entitled her to the full and equal accommodations, advantages, facilities, privileges, or services for her condition.

93. DEFENDANTS, acting within the scope and course of their employment and/or their contractual agreements with Defendant COUNTY, had a duty to provide AMANDA SLOAN

22.

medical and mental health accommodation, advantages, facilities, privileges, or services for her condition, and violated said statutory mandates herein. The conduct of all DEFENDANTS, as described herein, acting in the course and scope of their employment and/or contractual agreements for Defendants COUNTY and CFMG, violated California Civil Code Section 52.1, they interfered with plaintiffs' decedent's exercise and enjoyment of her civil rights, SLOAN died, and Plaintiffs have suffered damages as set forth herein.

94. As a direct and proximate result of defendants' violation of Civil Code Section 52.1, decedent suffered violation of her constitutional rights, and suffered damages as set forth herein.

95. Because this conduct occurred in the course and scope of employment, Defendants COUNTY and CFMG are therefore liable to PLAINTIFFS pursuant to respondeat superior.

96. PLAINTIFFS are entitled to injunctive relief and an award of their reasonable attorney's fees pursuant to Civil Code Section 52.1(h).

97. WHEREFORE, PLAINTIFFS pray for relief, as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
(Negligent Hiring, Retention, Training, Supervision, and Discipline)
(ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

98. PLAINTIFFS re-allege and incorporate by reference herein all preceding paragraphs of this Complaint, except for allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by DEFENDANTS, and allegations requesting punitive damages.

99. At all times mentioned herein, defendants COUNTY and CFMG, by and through their agents and employees, have and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its sheriff officer employees so as to avoid unreasonable risk of harm to citizens. DEFENDANTS failed to take necessary, proper, or adequate measures in order to prevent the violation of decedent's and plaintiffs' rights, the suffering and death of decedent, and

23.

injury and damages to decedent and plaintiffs. All DEFENDANTS failed to supervise subordinates regarding the deliberate indifference to the necessity to protect inmates, to provide access and delivery of mental/medical health care and life saving care and attention to inmates and detainees who were suicidal and/or suffering from mental disabilities.  Moreover, all DEENDANTS knew or should have known of this custom, policy, pattern or practice of unconstitutional acts, and these Defendants had a duty to investigate their subordinates, and to instruct their subordinates to prevent similar acts to other persons, but failed to take steps to properly train, supervise, investigate or instruct Jail Personnel, and/or failed to have adequate policies and procedures to this end.  This lack of adequate supervisorial training, and/or policies and procedures demonstrates the existence of an informal custom or policy of promoting, tolerating, and/or ratifying the continuing deliberately indifferent to SLOAN's serious medical needs and safety by Jail Personnel.

100. As a proximate result of all DEFENDANTS' negligent conduct, decedent and plaintiffs suffered damages including severe emotional and mental distress and injury having a traumatic effect on decedent's and plaintiffs' emotional tranquility.

## JURY DEMAND

101.  Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1.    For general damages in a sum according to proof;

2.    For special damages in a sum according to proof;

3.    For punitive damages in a sum according to proof;

4.    For leave to amend or supplement the Complaint as the identity of the Doe defendants is discovered and new evidence is uncovered;

24.

LAW OFFICEs
223 River Street
Suite D
Santa Cruz, CA
95060

5.  For declaratory relief;

6.  For violation of California Civil Code Sections 52 and 52.1, statutory damages, injunctive relief and reasonable attorney's fees;

7.  For violation of California Civil Code Section 51.7 pursuant to California Civil Code Section 52(b), punitive damages against Defendant peace officers, $25,000.00 for each offense and reasonable attorney's fees;

5.  For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;

6.  For cost of suit herein incurred; and

7.  For such other and further relief as the Court deems just and proper.


Dated: May 6, 2016                     /s/ Eric John Nelson

                                       Jonathan Che Gettleman
                                       Elizabeth Caballero
                                       CABALLERO & GETTLEMAN, INC.
                                       Eric John Nelson
                                       LAW OFFICES OF ERIC JOHN NELSON
                                       Diane Vaillancourt
                                       LAW OFFICE OF DIANE K. VAILLANCOURT
                                       Attorneys for Plaintiffs, *L.S. and W.S.*


Dated : May 6, 2016                    /s/David A. Fulton, Esq.
                                       CARTWRIGHT, SCRUGGS, FULTON &
                                       WALTHER
                                       716 Ocean Street, Suite 100
                                       Santa Cruz, CA 95060
                                       TELEPHONE: 831-457-1700
                                       FACSIMILE: 831-457-3788
                                       EMAIL: david@csfwlaw.com
                                       Attorneys for Plaintiff S.S.

25.

LAW OFFICES
223 River Street
Suite D
Santa Cruz, CA
95060